### MEAD *v.* SPINK *et al.*

(*Supreme Court, General Term, Second Department.* May 14, 1888.)

MORTGAGES—FORECLOSURE—RELIEF IN EQUITY.

A complaint alleged that plaintiff purchased land subject to a mortgage of $4,000, which he assumed; that the land was worth $15,000; that the mortgage was foreclosed, and plaintiff was prevented by poverty from protecting his property, and it

was sold for the costs of suit, and judgment for deficiency entered against him for a sum more than the original debt; that defendants were enforcing the judgment against him by execution and supplementary proceedings, without endeavoring to collect it of the original debtor, the mortgagor. Neither fraud nor any irregularity in the sale was alleged. *Held*, that no cause of action was stated, nor ground for equitable interference. PRATT, J., dissenting.

Appeal from special term, Kings county; CULLEN, Justice.

The action was brought by George W. Mead against Samuel T. Ludlow and others, (holders of a judgment against the plaintiff and Samuel W. Dunscomb and another, co-defendants,) and Erwin I. Spink and others, attorneys for the judgment creditors. It appeared by the complaint that plaintiff purchased certain premises for $15,000, subject to a mortgage thereon for $4,000, executed by the grantors. the defendants Dunscomb, which plaintiff assumed and agreed to pay; that when the mortgage fell due, April 1, 1875, plaintiff had become embarrassed in his pecuniary circumstances, and unable to pay it; that an action to foreclose the mortgage was begun July 8, 1876, and on December 10, 1877, a judgment of foreclosure and sale, with the usual clause for entry of a deficiency judgment, was rendered, and the premises sold at public auction pursuant thereto, September 10, 1878; that "there was little or no bidding or competition, and that the said mortgaged premises were purchased and bidden in by or for" the plaintiffs in the foreclosure action "at a merely nominal sum, and for less than the value thereof;" that the amount then due, with costs, etc., was $5,100, and that on October 5, 1878, the plaintiffs in that action entered a deficiency judgment against the plaintiff herein, without notice, for $4,778.64; that the premises sold were worth far more than the entire amount due on the bond and mortgage, and that "plaintiff, being then in embarrassed pecuniary circumstances, was wholly unable to protect his interest in said premises upon said sale, and that he had no defense to said foreclosure action, and could not prevent the foreclosure of said mortgage, nor could he bid in the property, nor in any manner prevent the sacrifice of the same in the way it was sacrificed, as above set forth, at said sale, nor prevent the said supposed and claimed deficiency from arising thereon, and the entry of the said judgment therefor." The complaint further alleged that no proceedings were taken to enforce the judgment until defendant Wright, as attorney for Ludlow, applied for and obtained leave to issue execution, February 27, 1886; that execution was issued against plaintiff only; and that Ludlow and Wright, his attorney, and his successors, Erwin I. Spink and Richard M. Martin, have since been endeavoring to collect the judgment by proceedings supplementary to execution, or otherwise. The defendants Spink and Martin demurred to the complaint for insufficiency. The demurrer was sustained, and plaintiff appealed.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*Sewall Sergeant*, for appellant. *Spink & Martin*, *pro se*, respondents.

BARNARD, P. J. The plaintiff, by his purchase of the mortgaged premises, became the principal debtor. The land was subject to a mortgage given by the Dunscombs, but the plaintiff agreed to pay it as part of the purchase money. *Comstock* v. *Drohan*, 71 N. Y. 9; *Fairchild* v. *Lynch*, 99 N. Y. 359, 2 N. E. Rep. 20. As a matter of course, when the plaintiff failed to perform his agreement, and the mortgage was foreclosed, the holder of the mortgage entered up a judgment for a deficiency against the mortgagor and the plaintiff. who was to pay it. There was no question of the regularity of the sale, and, if it did bring less than its value, no cause of action results therefrom to the owner of the fee. There is no standard of value, in the absence of fraud, other than that received by a public sale according to law. The poverty of the plaintiff, which prevented his paying his debt at or before the sale, was no defense to the action in foreclosure. No ground for equitable ruling is presented, unless an attempt is made to collect of a principal debtor instead of a

surety. If the surety should pay it, the principal debtor would be responsible to repay it. The judgment should be affirmed, with costs.

DYKMAN, J., concurs.

PRATT, J., (*dissenting.*) Gross unreasonableness and oppression is a well-established ground of equitable relief against contracts. Even at law, and where no fraud is suggested, contracts are sometimes relieved against upon that ground. The old *Horse-Shoe Case*, cited 2 Ves. Sr. 155, where the purchaser agreed to pay one barleycorn for the first nail, two for the second, and so on, doubling for the whole thirty-two nails, is a case in point. But the ordinary tribunal for relief is equity, and bargains shown to be unconscionable are readily relieved against upon equitable terms, or wholly set aside, as justice may require. It is not necessary that fraud be shown in any other way than by the attempt to enforce a contract intrinsically unconscionable, which is sometimes said to be a species of fraud. Beyond certain limits, not always easy to define, equity will not allow one to take advantage of the necessities of others. It needs no argument to show that if a person, tied upon a railroad track, signs a contract to pay a fortune to induce a by-passer to cut the thongs that hold him in the face of death, the contract could never be enforced. In daily life such pronounced occasions will not be apt to occur, but the principle is familiar, and constantly applied, that contracts will be relieved against when so hard and oppressive as to shock the moral sense. Inequality in the condition of the contracting parties is an element that is regarded, and, where so great that the free exercise of the will is interfered with, will sometimes of itself be sufficient ground for relief. Nor is it an insuperable objection to the relief that the oppression is produced by legal measures; nor is the contract always protected if it be the judgment of a court. The ancient case of *Lord Cranstown* v. *Johnston*, 3 Ves. 170, was such a case, yet relief was given in equity. There a creditor had proceeded to judgment against his debtor in the island of St. Christopher, and had sold his property for a grossly inadequate price. The proceedings were regular, and no fraud or deceit was shown; yet, on the ground that the inadequacy was gross, and that the creditor seemed actuated by a desire, not so much to collect his debt, as to obtain the estate for a small sum, the court of chancery gave relief against the judgment. To use the law for purposes of oppression was regarded as a fraud upon the administration of justice. Such an application of the doctrine is familiar in our own courts. The above case, and its principle, was cited with approval in *McDonald* v. *Neilson*, 2 Cow. 139. There the whole court of errors were agreed that a regularly obtained judgment will be relieved against in equity where there are circumstances of extraordinary hardship or great inadequacy of consideration. In that case it was said by Chief Justice SAVAGE to be a long and well settled rule of equity to protect against that species of oppression which is sought to be justified under forms of law. Page 170. In that case a man worth $20,000 was defendant in a judgment of $480. Execution was issued, and, after $1,200 of property had been sold for $300, defendant made a settlement to avoid further sacrifice, by which he agreed to be responsible for certain debts of his son owing to the judgment creditor. Chancellor KENT held these facts to show such oppression and abuse of legal proceedings as to render the settlement invalid. A majority of the court of errors sustained the settlement, on the ground that the father was morally responsible for the son's debts, being in possession of property of the son which should have been devoted to the payment of his debts. Were it not for that feature of the case, the decision of the chancellor would have been affirmed. The whole court were of the opinion that the pressure was such as to render the settlement invalid, had not other equities intervened. Judge SUTHERLAND said: "The system of law would be lamentable that should sanc-

tion such proceedings." Chief Justice SAVAGE said, in the language already quoted: "No doubt chancery has power to set aside judgments regularly obtained, if there are circumstances of extraordinary hardship or great inadequacy of consideration." Comparison of the facts in the case at bar shows the plaintiff has abundant ground to claim relief. Here property worth $15,-000 is mortgaged for a debt of $4,000. Upon foreclosure the owner is prevented, by poverty, from protecting the estate, which is bidden off by the plaintiff in the execution for a trifling sum, the costs of suit, leaving the debt undischarged, a deficiency judgment being entered therefor. The creditor thus, for a pittance, obtains possession of property, to the amount of $15,000, and now the judgment is sought to be enforced for the original debt. The oppression shown in the cases cited is trifling in comparison with that in the case at bar. Upon the facts here shown, to refuse relief would bring scandal upon the administration of justice. The plaintiff's practice is correct in seeking relief by an independent action. In some cases relief will be given by motion in the original suit, but that method is not exclusive. The jurisdiction of the court does not depend upon form, and can be more freely exercised in an independent action than in a more summary proceeding. The judgment against which relief is sought is technically regular. But the plaintiff has had possession of property of the judgment debtor enough to pay the debt many times. To allow him to collect his debt yet once again would make the court a party to a robbery. There was no laches until an attempt was made to enforce the deficiency judgment; the judgment debtor might well presume that the judgment creditor would regard the voice of justice, and not seek to enforce an indefensible claim. Had this action been begun when no proceedings to collect the judgment were threatened, it might have been held that the relief would only be granted upon payment of costs of this action. The respondents, by contesting the just claim of plaintiff, and especially as they are acting for their own benefit, should pay the costs of the action both at special term and in this court. The judgment should be that they be enjoined as prayed for in the complaint, with costs to appellant as above.